## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

GARY B. WASHINGTON     :
Petitioner

   v.        : CIVIL ACTION NO. WDQ-02-3973

RONALD HUTCHINSON, WARDEN
   and        :
THE ATTORNEY GENERAL FOR THE
STATE OF MARYLAND
Respondents      :

### MEMORANDUM

   Now before the Court is  Maryland prisoner Gary B. Washington's 28 U.S.C. §2254 petition for

habeas corpus relief.  Washington, who is represented by counsel, challenges his 1987 convictions and

sentences in the Circuit Court for Baltimore City, Maryland for first degree murder and use of a handgun

in the commission of a crime.  Respondents filed an Answer, and Washington subsequently filed a

Memorandum of Law.

   Upon review of the pleadings, exhibits, and applicable law, the Court finds no need for an

evidentiary hearing.  See 28 U.S.C. Section 2254(e)(2); Rule 8(a), Rules Governing Section 2254 Cases

in the United States District Courts. For the reasons that follow, the Petition will be dismissed and relief

denied.

**I.  Procedural History**

   On June 16, 1987, a Baltimore City Circuit Court jury found Washington guilty of first degree

murder and use of a handgun in the commission of a crime of violence.[1]  Paper 11, Exhibit 11 at 122-23.

On July 20, 1987, the Baltimore City Circuit Court imposed a life sentence on the murder conviction and

twenty years consecutive on the handgun conviction. Paper No.1, Exhibit 1 at 1 and  Exhibit 12. On July

21, 1987, Washington filed a Notice of Appeal with the Court of Special Appeals. On November 18,

1988, the Court of Special Appeals filed an unreported opinion affirming Washington's convictions. See

Washington v. State, No. 261, September Term (1988).          Washington filed a petition for post

conviction relief on February 24, 1997.  The post conviction court held hearings on July 22, 1998 and

December 6, 1999, and denied the petition on December 10, 1999.  Paper No. 1, Exhibit 3.  On January

10, 2000, Washington filed an Application for Leave to Appeal Paper No. 11, Exhibit 19 at 1-6.  The

Court of Special Appeals affirmed the circuit court's denial of post conviction relief in an unreported

opinion. See Gary B. Washington v. State of Maryland, No. 3078, September Term, (1999),  filed on

April 9, 2002.  Paper No. 1, Exhibit 4. The mandate issued on May 9, 2002. Paper No. 11, Exhibit 23.

Washington filed a Petition for Writ of Certiorari in the Maryland Court of Appeals on May 24,

2002.  Paper 11, Exhibit 24.  The Maryland Court of Appeals denied certiorari review on July 18, 2002.

Paper No. 1, Exhibit 5.   Washington's motion for reconsideration was denied on October 10, 2002.

Paper No. 1, Exhibit 6.

**II. Claims Presented**

Washington presents three claims in his 28 U.S.C. §2254 petition. First, he alleges that his trial

---

[1]Washington was convicted of fatally shooting Beryl "Bo Bo" Franklin, also known as Faheem
Rafig Ali, on December 27, 1986. The facts of the case were summarized on appeal. Paper No. 1,
Exhibit 2. The facts will be referenced as relevant to the issues presented here.

counsel labored under an actual conflict of interest. Paper No. 1 at 5-9. Second, he contends that the "cumulative effect of trial counsel's errors was not adequately considered." Paper No. 1 at 10. Third, he claims that the "post conviction court's credibility finding that the sole identifying witness' recantation was not believable was clearly erroneous." Id.

## III. Standard of Review

This petition is subject to the provisions of the federal habeas statute, 28 U.S.C. § 2254, as amended, which provides a "highly deferential standard for evaluating state-court rulings," Lindh v. Murphy, 521 U.S. 320, 333 n.7. (1997). A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362 (2000), Justice O'Connor explained that a state court decision is "contrary to" clearly established federal law, when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 412-413. A state court decision is based on an "unreasonable application" of clearly established federal law when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409-410. Furthermore, when a state court

has made a finding of fact, it is presumed to be correct and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## IV. Analysis

### A. Conflict of Interest

Washington contends that the state appellate court, in its review of the post conviction court decision, erred when it failed to find a conflict of interest and applied the wrong federal standard for ineffective assistance of counsel. Paper No. 16 at 2. He maintains that he was denied effective assistance of counsel because his trial counsel operated under an actual conflict of interest that prevented him from providing competent legal representation. Specifically, he contends that his trial counsel labored under a conflict of interest because he had previously represented Lawrence Thomas (Thomas), the man Washington alleges actually committed the murder for which he was on trial.[2] Washington alleges he was adversely affected as a result because his trial attorney advised Thomas to seek other counsel, thereby preventing Thomas from being called as a witness, and the opportunity to examine him was lost. Paper No. 1 at 6- 7.

Washington raised, *inter alia*, constitutionally ineffective assistance due to conflict of interest in his petition for post conviction relief. Paper No. 11, Exhibit 16. The post conviction court applied the two-

---

[2] Washington testified at the post conviction hearing that he told his trial attorney Paul Polansky on January 6, 1987, that Lawrence Thomas was the murderer. Paper No. 1, Exhibit 4 at 10. On January 10, 1987, Thomas was arrested for a narcotics violation. On March 10, 1987, Paul Polansky entered his appearance for Thomas in the Circuit Court for Baltimore City. Paper No. 1 at 4, n. 3. On March 17, 1987, he elected a jury trial and filed pre-trial motions. See id. Ten days later, on March 20, 1987, Thomas pleaded guilty and was placed on probation. See id; see also Paper No. 1, Exhibit 4 at 10.

part test in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), and concluded there was no evidence that

counsel's representation had fallen below an objective standard of reasonableness or had prejudiced

Washington's defense. Paper No. 1, Exhibit 3 at 7.

The Court of Special Appeals granted leave to appeal.  In its opinion affirming the post conviction

court, it noted: [3]

> A narrow exception to the <u>Strickland</u> standard exists where defendant's ineffective
> assistance claim is based on a conflict of interest. <u>See</u> <u>Strickland</u>, 466 U.S. at 692, 104 S. Ct.
> 2052. In addressing an ineffective assistance claim alleging conflict of interest, we do not apply
> the <u>Strickland</u> two-pronged test but rather a more lenient standard that does not require a
> showing of prejudice. <u>Lettley v. State</u>, 358 Md. 26, 33 (2000).
> Included in a defendant's right to have assistance of counsel is 'the right to an attorney
> free of conflicts of interest.' <u>Lettley</u>, 358 Md. At 34. Counsel's loyalty must be undivided and
> free from any conflict of interest. <u>Id</u>. The right of a defendant to have representation free from
> conflicts of interest extends to 'any situation in which defense counsel owes conflicting duties
> to the defendant and some other third person.'

Paper No. 1, Exhibit 4, at 3-4.[4]

The appellate court then turned to the applicable standard of review:

> If the defendant informs the trial court of a possible conflict of interest, the trial court
> must follow what has become known as the *Glasser/Holloway* Standard.[5] Under this
> standard, once the defendant properly demonstrates a potential conflict of interest to the trial
> court in a timely manner, the trial court must "take adequate steps to ascertain whether the
> conflicts warrant separate counsel." [citing <u>Lettley</u>, 358 Md. at 39].  Furthermore, if a trial
> court fails to take these steps, reversal is automatic without a showing of prejudice.  Appellant
> contends that the *Glasser/Holloway* standard is applicable in this case.

---

[3]The court granted leave to appeal on the question whether the post conviction court had erred
in denying Washington a new trial which it stated presented a mixed question of law and fact.
Paper No. 1, Exhibit 4 at 1.

[4] The court also discussed Rules 1.7 and 1.9 of the Maryland Rules of Professional Conduct.

[5]<u>See</u> <u>Glasser v. United States</u>, 315 U.S. 60 (1942); <u>Holloway v. Arkansas</u>, 435 U.S. 475
(1978).

On the other hand, when a possible conflict exists, but the trial court is not informed of the conflict in a timely manner, the Cuyler [6] standard applies. Under this standard, a defendant must show that an "actual conflict adversely affected his lawyer's performance." Id. Thus, unlike the *Glasser/Holloway* standard, a defendant in the Cuyler scenario must demonstrate an adverse effect. Id. The adverse effect is not presumed as in the *Glasser/Holloway* approach. Id. To prevail under either scenario, however, a defendant must show that an actual conflict of interest existed. We must therefore make a fact specific determination of whether the case at bar is one in which appellant's trial counsel had a conflict of interest.

Paper No. 1, Exhibit 4 at 5-6. [7]

In order to make a fact specific determination whether a conflict of interest existed, the Court of Special Appeals examined the information presented during trial and at the post conviction hearing. Paper No. 1, Exhibit 4 at 6. At trial, witness Otis Thomas identified Washington as the man who shot the victim. Id. That testimony was contradicted by Washington, members of his family, and his friends Ronald Brady and Nathan Oliver. Id. Washington testified that he saw Lawrence Thomas strike the victim with a handgun that appeared to fire "accidently." Id. At a bench conference during the presentation of defense evidence, the prosecutor informed the judge that the State intended to call Lawrence Thomas as a rebuttal witness, stating: "I am sure that [trial counsel] can get [Thomas's address] for me... [Thomas] is his client..." Paper No 1, Exhibit 4 at 7.

On the following day, before Mr. Brady testified for the defense, the prosecutor informed the judge

---

[6]See Cuyler v. Sullivan, 446 U.S. 335 (1980).

[7]In reaching its decision, the Court of Special Appeals adopted the approach in Enoch v. Gramley, 70 F.3d 1490, 1496-97 (7th Cir. 1995), and Smith v. White, 815 F.2d 1401,1406 (11th Cir. 1999) (holding that in the context of successive representation, a defendant does not demonstrate a disqualifying divergence of interests unless it is shown that (1) counsel's earlier representation...was substantially and particularly related to counsel's later representation, or (2) counsel actually learned particular confidential information during the prior representation...that was relevant to the later case. 815 F.2d at 1406.

that she had spoken to Thomas and that " [trial counsel] told [Thomas] to get an attorney for this particular case." Id.

> The Court:            Is he [Thomas] your witness?
>
> [Trial Counsel]:   He is another witness. I believe a good response to that is that I first represented Mr. Thomas in the past. My recollection is that some time ago, probably a couple months ago. We had not represented him in this case. He received a witness summons in this case and a letter summonsing him to come down to speak to the State. He called me on the phone, and I suggested to him that I could not represent him. I could not discuss the case with him. I advised him to get an attorney. It is my opinion that Mr. Thomas should call an attorney before he speaks to anyone.
>
> The Court:            Why is that?
>
> [Trial Counsel]:  Because of the evidence that is going to come out in the case. Your honor, on the side of caution to have a lawyer is absolutely the defense's impression.
>
> The Court:            Before he was summonsed?
>
> [Trial Counsel]:  Absolutely not.
>
> The Court:            We will speak to him. What happened in the hallway?
>
> [Trial counsel]:    [The prosecutor] spoke to Mr. Thomas. As a witness he may be aware of the summons yesterday. I walked and I stood out of the way. I didn't stand to hear what was discussed with Mr. Thomas. It would be interesting to me as to what he has been told about what has gone on in this trial. [The prosecutor] didn't feel I had the right to speak with him outside her presence. She stood right there. All I told Mr. Thomas was I did not think it was appropriate to discuss anything about this case or past relationships and not to discuss the case with me. I told him that I didn't think it was appropriate, but I did tell him to consult counsel. It seems very clear, as a matter of fact the allegations made that Mr. Thomas was involved in this offense or whether it is believed or not by the States' Attorney or the jury does remain to be seen. I suggested to him that he speak to a lawyer. That he get his own lawyer and that way there would be no question. It seems to me to be the appropriate thing to tell Mr. Thomas.

Paper No. 1, Exhibit 4 at 7-9.

Later, during cross-examination of witness Ronald Brady, the prosecutor requested permission to bring Lawrence Thomas into the courtroom "to do a demonstration." Paper No. 1, Exhibit 4 at 9. Washington's trial counsel objected, stating that "[Thomas's lawyer] would like to be present when Lawrence Thomas is called as a witness." Id. The trial judge ruled that absent the presence of his attorney, the State could not have Mr. Thomas participate in a demonstration. Id. Before Brady's testimony concluded, the judge permitted Thomas to enter the courtroom and stand next to Washington. Mr. Brady identified Lawrence Thomas as the person who struck the victim. Id.

The Court of Special Appeals next reviewed Washington's post conviction proceedings. The Court noted that Lawrence Thomas was arrested for an unrelated narcotics violation on January 10, 1987, and that on March 10, 1987,  Washington's trial counsel entered his appearance in that case, which concluded on March 20, 1987, after Thomas entered a guilty plea and received a suspended sentence. Paper No. 1, Exhibit 4 at 10.  Further, at the post conviction hearing, Thomas testified that Washington's trial attorney, Paul Polansky,  had represented him in the past. Paper No. 1, Exhibit 4 at 10.  Thomas also testified that Washington's trial counsel said not to talk to him. Id.[8]  In its opinion, the Court of Special Appeals found:

> [Washington] testified that on January 6, 1987, he retained trial counsel to represent him in his case, and told trial counsel that Thomas was a suspect in the murder. He was told by Thomas that Thomas admitted to the murder during a conversation with [Washington's] trial counsel. Before his arraignment, [Washington] discussed Thomas' admission with [his] trial counsel, who filed an entry of appearance in [Washington's] case on March 3, 1987 .
> [Washington's] trial counsel testified as follows. He had represented [Washington],

---

[8] The Court of Special Appeals indicated in a footnote: "As Thomas did not confess when he testified at appellant's post conviction hearing, we shall not hypothesize that he would have confessed at [Washington's] trial. Paper No. 1, Exhibit 4, at 16 n. 5.

[Washington's] brother, and Thomas a number of times prior to [Washington's] murder charge. [Washington] had told him that Thomas was the shooter, but Thomas had not confessed to him that he was the shooter. He did not remember why Thomas showed up at trial or why he had a witness summons. He did not believe that Thomas would admit to the murder charge in front of the jury. He probably did not want to call Thomas for strategic reasons.

Paper No. 1, Exhibit 4 at 10-11.

In light of the above, the Court of Special Appeals deemed unpersuasive Washington's arguments that his trial attorney operated under an actual conflict of interest. "Nothing in the record suggests that [Washington's] trial counsel learned anything from his representation of Thomas that would impact on his ability to represent [Washington]." Paper No. 1, Exhibit 4 at 26. The court found there were no facts alleged to show that trial counsel's prior representation was substantially and particularly related to his representation of Washington or that trial counsel learned particular information from his representation of the witness that was relevant to Washington's case. Id. The court observed that Washington's trial counsel represented Thomas in an unrelated narcotics case that concluded on March 20, 1987, pretrial motion hearings for Washington began on June 4, 1987, and Washington was found guilty on June 16, 1987, approximately three months after trial counsel's representation of Lawrence Thomas had ended. The court determined that no conflict of interest had been shown. Paper No. 1, Exhibit 4 at 13.

Having determined no conflict of interest existed, the Court of Special Appeals ruled the post conviction court properly applied Strickland to test the alleged errors of trial counsel. Under the first part of the Strickland standard, trial counsel's performance must be shown to have fallen below an objective standard of reasonableness. The appellate court determined that Washington had failed to overcome the strong presumption that trial counsel's conduct was sound trial strategy. The Court of Appeals wrote :

9

> As to the argument that [Washington's] trial counsel should have called Thomas to the stand, the [post conviction] Court observed that it was entirely reasonable to infer that if Thomas was called to the stand, he would deny that he committed the murder.   In fact, it was much more likely that Thomas would contradict the testimony of the defense witnesses that [Washington's] trial counsel did call to the stand.

Id.  In addition, the court rejected Washington's argument that trial counsel's conduct contravened the Maryland Rules of Professional Conduct, stating:

> Had... trial counsel exploited his prior representation of  Thomas, under the guise of a  no longer existing attorney-client relationship, such action would have violated Rule 1.9(b). [Washington's] trial counsel acted appropriately in advising Thomas to seek counsel.

Paper No. 1, Exhibit 4 at 16.  Further, the Court of Special Appeals determined that even assuming arguendo that counsel's actions were unreasonable, Washington had failed to establish prejudice, the second part of the Strickland analysis. Paper No. 1, Exhibit 4 at 17.  The Court observed:

> ...that [Washington's] evidence does not establish a substantial possibility that, but for... trial counsel's errors, the outcome would have been different. As to the contention that calling Thomas to the stand would have changed the outcome of [his] trial, putting aside the fact that Judge Hubbard [the trial judge] had discretion to prohibit [Washington] from putting Thomas on the stand to invoke his privilege against self incrimination in from of the jury, it is just as likely that Thomas' testimony would have hurt [the] defense. Advising Thomas to obtain counsel, which was appropriate advice under the circumstances, was of no consequence to the outcome of the trial.

In the instant petition for federal habeas relief, Washington urges this Court to reexamine the finding by Maryland Court of Special Appeals that no conflict of interest has been shown. Paper No. 1 at 7. Washington posits that the Court of Special Appeals erred by focusing on the ending date of trial counsel's representation of Lawrence Thomas, March 20, 1987, and the beginning of pretrial motions hearings in Washington's case on June 4, 1987.   Washington argues that having done so, the court failed to acknowledge or weigh counsel's concurrent representation. Further, he contends the appellate court erred

when it analyzed this case solely as a case of successive representation.[9] Id.

It is clearly established federal law that the Sixth Amendment "right to counsel is the right to the effective assistance of counsel." Strickland v. Washington, 466 U.S. at 686 (internal quotations omitted). Further, it is clearly established that the right to effective assistance includes the right to representation free from conflicts of interest. See Rubin v. Gee, 292 F.3d 396, 401 (4th Cir. 2002) (citing Cuyler v. Sullivan, 446 U.S. 335, 348-50 (1980). Lawyers owe their clients a duty of loyalty, including the duty to avoid conflicts of interest. The Supreme Court has emphasized that the duty of loyalty is "perhaps the most basic of counsel's duties." Strickland, 466 U.S. at 692. An adverse effect, however, cannot be presumed solely from the existence of a conflict of interest. See Mickens v. Taylor, 535 U.S. 162, 170-75 (2002); Rubin, 292 F.3d at 401.[10]

In light of the deferential standard of review mandated by statute, see 28 U.S.C. § 2254(d), Washington has not shown that the state court's decision was an objectively unreasonable application of federal law as established by the Supreme Court. The Maryland Court of Special Appeals recognized that where a conflict due to multiple representation is raised, the standard applicable is that set forth in Cuyler v. Sullivan, 446 U.S. 335 (1980). Absent clear and convincing evidence to the contrary, the state intermediate appellate court's findings that " [n]othing in the record suggests that [Washington's] trial counsel learned anything from his representation of Thomas that would impact on his ability to represent [Washington]," and that "Washington failed to establish that a conflict of interest existed" are

_____

[9]Even if these claims were true, Washington has failed to show adverse effect as a result.

[10]Thus, even if Washington had been able to demonstrate trial counsel labored under an actual conflict of interest, adverse effect has not been demonstrated.

presumed correct absent clear and convincing evidence otherwise.  Accordingly, there is no basis to disturb

the intermediate appellate court's decision.  See Sullivan , 446 U.S. at 348-49; Mickens v. Taylor, 535

U.S. 162, 171  n. 5 (2002).


### B.  Cumulative Effect of Errors

Washington's second claim is the cumulative effect of trial counsel's errors was not adequately

considered. Paper No. 1 at 10.  These purported errors are trial counsel's failure to:

1) interview three listed prosecution witnesses who did not identify Washington in a photo array;

2) failure to obtain the correct certified motor vehicle records to prove the car fleeing the scene of the

murder was similar to the vehicle owned by Lawrence Thomas; and 3) request lesser included counts of

murder.  Paper No. 1 at 5-10.

The post conviction and intermediate appellate courts rejected the claim of cumulative error.

Paper No. 1, Exhibit 3 at  Exhibit 4 at 17-18.  The Court of Appeals concluded that the counsel errors

asserted "were unrelated and minimal errors that, when considered collectively, have no greater force than

they do individually."  Paper No. 1, Exhibit 4 at 18.   This claim is foreclosed as a matter of law. See

Mueller v. Angelone, 181 F.3d 557, 586 n. 22 (4th Cir 1999); Fisher v. Angelone, 163 F.3d 835, 852 (4th

Cir. 1998) (holding ineffective assistance of counsel claims must be reviewed individually, rather than

collectively).

Washington's individual claims of ineffective assistance were considered and rejected by the post

conviction court under the Strickland standard.  Paper No. 1, Exhibit 3 ¶ III.  Upon review of the

ineffective assistance claim for  failure to request jury instructions on lesser included counts of murder, the

post conviction court, citing <u>Strickland</u>, 466 U.S. at 689, determined that counsel's decision not to request

jury instruction on lesser counts is presumed to be sound trial strategy, and Washington had failed to allege

any facts to overcome this presumption. Paper No. 1, Exhibit 3 ¶ III.b.  As to counsel's alleged  failure to

interview and subpoena witnesses, the state post conviction court observed that Washington failed to

produce those witnesses and demonstrate how the failure to call them prejudiced his right to a fair trial.

Paper No. 1, Exhibit 3 ¶ III.c.  In regard to the alleged failure to subpoena motor vehicle records, the post

conviction court found that Washington failed to demonstrate prejudice because there was no evidence that

Lawrence Thomas owned a red car at the time of the murder. Paper No. 1, Exhibit 3 ¶ III.d.  The court's

decision constitutes a reasonable application of federal law, and there is no basis to disturb the state

adjudication.

### C.  Witness Recantation

Washington's third and final claim is that the "post conviction court's credibility finding that the sole

identifying witness was not believable was clearly erroneous." Paper No. 1 at 10.[11] This claim alleges solely

state error and does not allege violation of the Constitution or laws of the United States.  As such, this claim

is not cognizable on federal habeas review.  <u>See</u> 28 U.S.C. § 2254(a);  <u>Spencer v. Murray</u>, 18 F.3d 237,

239 (1994).  Claims of error and irregularity in connection with state post conviction proceedings are not

---

[11]The post conviction court found insufficient evidence to support a finding that the police
coerced an eyewitness to identify Washington. The post conviction court noted the identification
remained unchanged throughout the trial process, only to be recanted thirteen years later. Paper No.1,
Exhibit 3 ¶ I; Paper No. 1, Exhibit 4 at 19. The Court of Special Appeals found "ample evidence" to
impeach the recantation and concluded that it would not "disturb the factual findings or credibility
determinations of a post conviction court unless they are clearly erroneous." (Citations omitted). Paper
No. 1, Exhibit 4 at 19.

cognizable in a federal habeas proceeding. <u>Coleman v. Thompson</u>, 501 U.S. 722, 752 (1991); <u>Mackall v. Angelione</u>, 131 F.3d 442,447-48 (4th Cir. 1997).  Claims based on violations of state law or procedure that do not constitute an infringement of a specific constitutional protection or fundamental fairness are not cognizable. <u>See</u> <u>Estelle v. Mc Guire</u>, 502 U.S. 62, 67-75 (1991).  Credibility is a finding of fact, and under 28 U.S.C. §2254(e)(1), a state court's finding of facts are presumed correct absent clear and convincing evidence to the contrary.  Such evidence has not been presented here.  For these reasons, this claim provides no basis for habeas relief.

## V. Conclusion

In light of the foregoing, Washington has failed to show that the state court adjudication of his case was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  <u>See</u>  28 U.S.C. § 2254(d).   Accordingly, the Petition will be denied and dismissed by separate Order.


April 26, 2005                                         _____/s/_____
Date                                                              William D. Quarles, Jr.
                                                                    United States District Judge